IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00860-PAB

MARCUS PALMER,

      Applicant,

v.

STEVE HARTLEY, Warden, Limon Corr. Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

_____

ORDER ON PETITION FOR HABEAS CORPUS
_____

This matter comes before the Court on Mr. Palmer's Amended Application for a

Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 4],[1] which

Respondents answered [Docket No. 18] addressing the merits.  Mr. Palmer filed a

Reply [Docket No. 24].  Having considered the same, along with the pertinent portions

of the State Court record [Docket No. 32], the Court concludes that an evidentiary

hearing is not necessary and the Amended Application should be denied.

I.  Background

      Mr. Palmer was convicted by a jury of second degree murder, felony murder, first

degree burglary, and felony menacing and was sentenced to life in prison.  The

judgment of conviction was affirmed on direct appeal.  *See People v. Palmer*, 87 P.3d

_____

[1]Because Petitioner appears *pro se*, the Court construes his filings liberally.  *See
Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, the Court does not serve as
his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

137 (Colo. App. 2003).  On April 12, 2004, the Colorado Supreme Court denied Mr.

Palmer's petition for writ of certiorari on direct appeal.

On March 29, 2005, Mr. Palmer filed in the trial court a postconviction motion

pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.  The trial court

denied the Rule 35(c) motion on September 29, 2005.  Mr. Palmer filed a notice of

appeal and the Colorado Court of Appeals ("CCA") affirmed the denial of the Rule 35(c)

motion.  *See People v. Palmer*, No. 05CA2534 (Colo. App. Aug. 2, 2007) (unpublished).

On February 25, 2008, the Colorado Supreme Court denied Mr. Palmer's petition for

writ of certiorari in the postconviction proceedings.  The Court received the instant

action for filing on April 17, 2008.

Previously, on May 22, 2008, Magistrate Judge Boyd N. Boland ordered

Respondents to file a Pre-Answer Response that addresses the affirmative defenses of

timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28

U.S.C. § 2254(b)(1)(A) if Respondents intended to raise either or both of those

defenses.  On June 11, 2008, Respondents filed their Pre-Answer Response, and on

August 4, 2008, Mr. Palmer filed a Reply to the Pre-Answer Response.  Senior Judge

Zita L. Weinshienk determined, upon completion of the Court's review of the timeliness

and exhaustion issues pursuant to D.C.COLO.LCivR 8.2C, that Respondents conceded

the Application is timely under 28 U.S.C. § 2244(d) and that Claims One, Two, Three,

Five, Eight, and Ten, and Subclaims (a), (c), (e), and (g) under Claim Eleven are

exhausted.  [*See* Draw/Dismiss Order [Docket No. 13].]  Judge Weinshienk also found

that Claims Four, Six, Seven, Nine, Twelve, and Subclaims (b), (d), (f), (h), (i), (j), and

(k) of Claim Eleven are procedurally barred.  [*Id.*]  Judge Weinshienk further noted that

Claim Thirteen merely recites the legal standards for ineffective assistance of counsel claims and is not a separate claim.

Mr. Palmer did not take issue with how his claims were characterized by Respondents in their Pre-Answer Response.  [*See* Docket No. 13 at 2-3.][2]  Therefore, the Court will adopt the same characterization of Mr. Palmer's remaining claims, which are as follows:

(1)     Information entered in Mr. Palmer's case did not provide notice of the elements of felony murder.

(2)     Trial court violated Mr. Palmer's right to a unanimous verdict and proof beyond a reasonable doubt when it failed to specify a particular victim with respect to all of the elements of the offenses of burglary and felony menacing in the jury instructions.

(3)     Trial court violated Mr. Palmer's right to due process when it failed to adequately instruct the jury on the "no duty to retreat" doctrine as it applies to self-defense.

(5)     Trial court violated Mr. Palmer's constitutional rights when it refused to instruct the jury to consider whether Mr. Palmer acted in self-defense when determining if he acted recklessly and negligently.

(8)     Trial attorney violated Mr. Palmer's right to testify when he used erroneous information to convince Mr. Palmer not to testify.

(10)     Trial attorney violated Mr. Palmer's Sixth Amendment right to counsel because he had a conflict of interest.

(11)     Trial attorney rendered ineffective assistance by:

(a)     failing to investigate the extent of information possessed by two defense witnesses;

(c)     failing to notify Mr. Palmer about the conflict of interest;

---

[2] Page numbers referred to in citations to documents filed in this case are the page numbers identified by the Court's electronic filing system.

(e)    providing Mr. Palmer with false information about his right to testify in order to prevent him from testifying; and

(g)    failing to file a bill of particulars regarding burglary.

## II.  Legal Standard

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A.   Section 2254(d)(1) -- Unreasonable Application of Clearly Established Federal Law

The threshold question pursuant to § 2254(d)(1) is whether the trial court applied unreasonably federal law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  As the Tenth Circuit Court of Appeals has explained:

[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at

4

1018.  If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.  Pursuant to *House,*

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08 [   ].  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018 (internal citations and quotation marks omitted).

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."

5

*Maynard*, 468 F.3d at 671.  "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Id.*

B.  Section 2254(d)(2) -- Unreasonable Determination of the Facts

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, and Mr. Palmer bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated."  *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [its] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* at 1178.  "This 'independent review' should be distinguished from a full de novo review of the petitioner's claims."  *Id.*

III.  Discussion

    A.  Law of the Case Doctrine

Senior Judge Weinshienk's exhaustion determination is binding here and provides the law of the case to the extent Respondents again assert that all subclaims under Claim Eleven are not exhausted, *see* Docket No. 18 at 13, and Mr. Palmer argues in his December 8, 2008 Reply that Claim Four, subsection three of Claim Nine, and Claims Six, Seven, and Eleven, except for subsections nine and ten of Claim Eleven, are properly exhausted.  "The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  The Tenth Circuit has recognized that the law of the case doctrine "applies to all issues that were previously decided, whether explicitly or by implication."  *Sparks v. Rittenhouse*, 314 F. App'x 104, 108 (10th Cir. Sept. 16, 2008) (unpublished decision) (citing *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)).

The courts are authorized to depart from the law of the case doctrine "only in three exceptionally narrow circumstances:  (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice."  *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009) (internal quotation marks omitted).

As stated above, in the order entered on September 18, 2008, Senior Judge Weinshienk explicitly concluded that Claims Four, Six, Seven, Nine, and Twelve and subparts of (b), (d), (f), (h), (i), (j), and (k) of Claim Eleven are procedurally barred. [Docket No.13 at 11-12.]  Senior Judge Weinshienk also concluded that Claims One, Two, Three, Five, Eight, Ten, and subparts (a, (c), (e) and (g) of Claim Eleven are exhausted.  Although Respondents have reasserted in their Answer the defenses of exhaustion and procedural default with respect to Claim Eleven, they acknowledge that subparts (a), (c), (e), and (g) were raised in the CCA.  [Docket No. 18 at 13.] Respondents, therefore, fail to demonstrate that a departure from the law of the case doctrine is proper in this case.

Mr. Palmer argues that exhaustion of Claim Four is demonstrated in his petition for certiorari review where he states that "[i]n [my] Opening Brief below, [I] argued that instructional error occurred at trial on three occasions, and that the error detrimentally impacted [my] due process rights to a fair trial, to an impartial jury, and to present a defense." [Docket No. 24 at 6.]  Nonetheless, upon review of Mr. Palmer's opening brief on appeal to the CCA, the Court finds no challenge to his right to a fair trial other than the reference in the heading of the claim to "his right to a fair trial by an impartial jury," the same as found by Senior Judge Weinshienk.

Mr. Palmer does not assert that the substance of the claim he raised in his opening brief on appeal regarding instructional error contained an argument based on federal constitutional grounds.  Even if the Court finds that Mr. Palmer did raise a fair trial issue in his petition for certiorari review, presenting a federal constitutional claim only to the Colorado Supreme Court does not satisfy the requirement that a claim must

8

be fairly presented to the state courts.  Without raising his right to a fair trial as a federal

claim in the court of appeals, Mr. Palmer did not meet the requirement set forth under

*O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), that he complete one round of the State's

established appellate review process.

As for Part Three of Claim Nine, Mr. Palmer argues that he raised and

exhausted in state court the ineffective assistance of counsel claims that he asserts

under Part Three, which include his trial attorney's failure to (1) know the law regarding

the first degree burglary charges; (2) request a bill of particulars; (3) object to the

incompleteness of the charges; and (4) provide a proper defense in light of the three

foregoing claims.  Judge Weinshienk dealt with each of these claims under Claim

Eleven, identified by Respondents as subclaims (f) and (g), and under Claim Thirteen,

which was found to merely recite the legal standards of ineffective assistance of

counsel.  Subpart (g) will be addressed below on the merits, and Subpart (f), as

discussed below, was not exhausted.

With respect to Claim Six, Mr. Palmer argues that he first raised the *Brady* claim

in his Rule 35(c) postconviction motion and provided the State with a fair and adequate

notice of the claim, including the fact that he was raising the claim in at least one

context as an ineffective assistance of counsel claim.  Nothing in Claim Six, as

presented in the Amended Application, indicates that Mr. Palmer is raising this claim as

an ineffective assistance of counsel claim.  The same holds true for Claim Seven.

Furthermore, as Judge Weinshienk determined, various subparts of Claim Eleven are

based on the same arguments that support Claims Six and Seven.

Finally, with respect to Claim Eleven, the only subparts that remain at issue with respect to the law of the case are trial counsel's failure to: (b) investigate the extent of the conflict of interest; (d) notify about the possibility of substitution of counsel; (f) know about burglary law; (h) raise discovery violations prior to trial; and (k) object to the prosecutor's improper comments.  Upon a thorough review of the opening brief on appeal in Mr. Palmer's Rule 35(c) postconviction motion, the Court finds that subparts (b), (d), (f), (h), and (k) were not raised.  [*See* Docket No. 18 at Ex. A.]

Neither Respondents nor Mr. Palmer demonstrates any of the three grounds that would authorize the Court to depart from the law of the case doctrine.  *See Clark*, 590 F.3d at 114.  The Court, therefore, finds no basis to revisit the issue of procedural default.  Accordingly, the Court will address only Claims One, Two, Three, Five, Eight, Ten, and subparts (a, (c), (e) and (g) of Claim Eleven on the merits.

B.  Merits of the Claims

1. Claim One -- Notice of Elements of Felony Murder

Mr. Palmer asserts that his Fifth and Fourteenth Amendment rights were violated because the felony murder count did not set forth all of the essential elements of the predicate felony "burglary" offense with which he was charged.  [Docket No. 4 at 7.]  Mr. Palmer states that the information in his state criminal case reads as follows:

> On or about the 10th of January, 2000, at the City and County of Denver, State of Colorado, Marcus Palmer did unlawfully and feloniously, acting alone and with one and more persons, commit and attempt to commit Burglary; and, in the course of and in furtherance of said crime that defendant was committing and attempting to commit, and in immediate flight therefrom, the death of a person other than one of the participants, namely Roosevelt Horton, was caused; contrary to the form of the statute in such case made and provided . . . .

Respondents argue that although an information may violate the Sixth Amendment by failing to provide adequate notice of the nature and cause of the accusations against a defendant, *Sallahdin v. Gibson*, 275 F.3d 1211, 1227 (10th Cir. 2002), an indictment or information is constitutionally sufficient if it contains the elements of the charged offense, fairly informs a defendant of the charge against which he must defend, and allows a defendant to bar future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87 (1974).  [Doc. No. 18 at 16-17.] Respondents further contend that, in *Stroud v. Polk*, 466 F.3d 291 (4th Cir. 2006), the court rejected a claim similar to Mr. Palmer's claim, finding that the state courts' reasoning was neither contrary to, nor an unreasonable application of, clearly established federal law.  [*Id.* at 18.]

In *Stroud*, the information charged the common law elements of first degree murder, which includes second degree murder, but did not specifically mention "murder by torture" as a predicate act for finding first degree murder.  [*Id.* at 18.]  Respondents also assert that, like *Stroud*, the CCA ruled that the information stated the predicate crime was "burglary" and then charged the elements of burglary in a separate count, which was sufficient to provide notice of the elements of felony murder.  *See State of Colo. v. Palmer*, 87 P.3d 137,139-40 (Colo. App. 2003).  [*Id.* at 19.]  Respondents further contend that the information in Mr. Palmer's case was more specific than the one upheld in *Stroud* because Mr. Palmer's information identified the predicate offense and stated the elements in a different section.  [*Id.*]

11

Mr. Palmer does not address Respondents' argument regarding this claim.  In his Reply, Mr. Palmer asserts that the arguments he states in his Application sufficiently state his case and that he stands on these arguments as a reply to Respondents' Answer.  [Docket No. 24 at 26.]

With respect to Claim One, the CCA found as follows:

The felony murder count in the information stated, inter alia, that defendant "unlawfully and feloniously, acting alone and with one and more persons, [did] commit and attempt to commit Burglary; and, in the course of and in furtherance of said crime that defendant was committing and attempting to commit, and in immediate flight therefrom, the death of a person other than one of the participants . . . was caused."

Another count charged defendant with first degree burglary, outlined the elements of burglary, and identified its predicate crime, felony menacing.  Defendant did not seek a bill of particulars or object to the completeness of the charges.

Defendant now contends that because the elements of burglary, including the intent to commit felony menacing, were not specified within the felony murder count, the information did not provide adequate notice of the predicate felony of burglary, and the trial court therefore lacked jurisdiction.  We disagree.

An information must provide the defendant with sufficient notice of the charged offenses and factual circumstances to allow adequate trial preparation and protect the defendant from subsequent prosecution for the same offense. *People v. Pollard,* 3 P.3d 473 (Colo. App. 2000).  However, it is not necessary to allege every element that must be proved at trial.  *People v. Richardson,* 58 P.3d 1039 (Colo. App. 2002).

An information may be deficient in substance or form.  An information is substantively sufficient if it tracks the language of the pertinent statute.  However, the failure to specify an underlying offense is a defect of form.  A defect in form that was not objected to at trial, as here, nevertheless may render the conviction void if it results in substantial prejudice to a defendant.  *See People v. Auman*, 67 P.3d 741 (Colo. App. 2002)(*cert. granted,* Mar. 24, 2003); *People v. Williams,* 984 P.2d 56 (Colo.1999).

Contrary to defendant's contention, the information here charging felony murder was substantively sufficient and therefore conferred jurisdiction on the trial court.  It specifically named the underlying offense, burglary, and otherwise tracked the felony murder statute.  *See* § 18-3-102(1)(b), C.R.S.2002 (felony murder statute listing "burglary" as one of the predicate felonies); *People v. Auman, supra* (listing of predicate crime to felony murder as simply "burglary" not substantive error); *People v. Williams, supra* (in a burglary charge, failure to allege underlying offense is not substantive error).

Moreover, we reject defendant's contention that the information was insufficient as to form, resulting in prejudice to defendant.  The information did not omit the predicate crime, but rather stated that the underlying offense was burglary.  *See People v. Williams, supra* (defect in form where no underlying crime was specified).  Defendant also has shown no prejudice.  The elements of burglary, including the intent to commit felony menacing, were specified in the burglary count; thus, defendant was on notice of the complete basis for felony murder.  *See People v. Auman, supra* (listing "burglary" as the predicate crime in felony murder count not prejudicial where other counts provided notice of burglary charges; court looks at context of other counts in determining prejudice); *cf. People v. Steiner,* 640 P.2d 250 (Colo. App. 1981) (one count in an information may, by proper reference, incorporate the allegations more fully set forth in another count).

*Palmer*, 87 P.3d at 139-40.

The Court may grant habeas relief in a challenge to the adequacy of the information only if the state court error deprived the defendant of fundamental rights guaranteed by the Constitution.  *Knewel v. Egan*, 268 U.S. 442, 446-47 (1925); *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999).  Under the Sixth and Fourteenth Amendments, a defendant is entitled to fair notice of the criminal charges against him, and claims of due process violations in not providing such fair notice are cognizable in habeas corpus actions.  *See Hunter v. State of New Mexico,* 916 F.2d 595, 598 (10th Cir. 1990); *Franklin v. White,* 803 F.2d 416 (8th Cir. 1986).  The sufficiency of a state charge is determined by the Sixth Amendment right "to be

informed of the nature and cause of the accusation." *United States v. Cruikshank,* 92 U.S. 542, 557-58 (1875) (internal quotations and citations omitted); *In re Oliver,* 333 U.S. 257, 273 (1948); *Rabe v. Washington,* 405 U.S. 313  (1972).  Where the charge embodies the wording of the statute, which is fully descriptive of the offense, it is constitutionally sufficient.  *Potter v. United States,* 155 U.S. 438 (1894).  The sufficiency of an information is not a federal habeas issue unless the information is so deficient that the convicting court was deprived of jurisdiction.  *Ferguson v. Davies*, No. 91-3052, 1991 WL 159849 at *6 (10th Cir. 1991) (unpublished) (citing *Heath v. Jones,* 863 F.2d 815 (11th Cir. 1989)); *Uresti v. Lynaugh,* 821 F.2d 1099, 1102 (5th Cir. 1987) ("It is well settled, however, that sufficiency of an indictment is not a matter for federal habeas relief unless the indictment is so deficient that the convicting court had no jurisdiction.").

The information in Mr. Palmer's state criminal case was entered on January 20, 2000.  Mr. Palmer was charged with first degree murder, Colo. Rev. Stat. § 18-3-102(1)(a), first degree murder, Colo. Rev. Stat. § 18-3-102(1)(b), and first degree burglary, Colo. Rev. Stat. §§  18-4-202 and 18-4-201(1).  The information reads in part as follows:

> A. William Ritter, Jr., District Attorney within and for the Second Judicial District of the State of Colorado, in the name and by the authority of the People of the State of Colorado, informs the Court that, on or about the 10th day of January, A.D. 2000, at the City and County of Denver, State of Colorado, MARCUS PALMER unlawfully, feloniously and after deliberation and with the intent to cause the death of a person other than himself did cause the death of ROOSEVELT HORTON; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado. . . .

> A. William Ritter, Jr., District Attorney, in the name and by the authority of the People of the State of Colorado, further informs the Court:

14

## SECOND COUNT

That on or about the 10th day of January, 2000, at the City and County of Denver, State of Colorado, MARCUS PALMER did unlawfully and feloniously, acting alone and with one and more persons, commit and attempt to commit Burglary; and in the course of and in furtherance of said crime that defendant was committing and attempting to commit, and in immediate flight therefrom, the death of a person other than one of the participants, namely, ROOSEVELT HORTON, was caused; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado.

## THIRD COUNT

That on or about the 10th day of January, 2000, at the City and County of Denver, State of Colorado. MARCUS PALMER, being armed with explosives and a deadly weapon, to-wit: Gun, did feloniously, unlawfully and knowingly enter and remain unlawfully, and remain unlawfully after a lawful or unlawful entry in the building and occupied structure of REATA ADAMS located at 2317 East 28th Avenue, # 4 with the intent to commit therein the crime of Felony Menacing and while effecting entry and while inside and while in immediate flight from said building and structure, the defendant did assault and menace ROOSEVELT HORTON and REATA ADAMS; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado.

*Palmer*, No. 00CR907 (District Court File) at 1-2.

The related Colorado statutes read as follows:

§ 18-3-102.  **Murder in the first degree.**

(1)     A person commits the crime of murder in the first degree if:

   (a) After deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person: or

   (b) Acting either alone or with one or more persons, he or she commits or attempts to commit . . . burglary . . .  and, in the course of or in furtherance of the crime that he or she is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone . . . .

§ 18-4-202.  First degree burglary

(1)     A person commits first degree burglary if the person knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime, other than trespass as defined in this article, against another person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, the person or another participant in the crime assaults or menaces any person, or the person or another participant is armed with explosives or a deadly weapon.

In this case, the Court finds no constitutional error in the predicate felony "burglary" offense as stated in the felony murder count.  The information is constitutionally sufficient as it embodies the wording of the statute, which is fully descriptive of the offense, and contains elements of the burglary offense that fairly informed Mr. Palmer of the charges against him so that he may defend himself and bar future prosecutions for the same offense.  The state court, therefore, was not deprived of jurisdiction.  Accordingly, the CCA's determination that Mr. Palmer was sufficiently apprised of the charges against him was not contrary to, or an unreasonable application of Supreme Court law.  Claim One will be denied on the merits.

2.  Claim Two -- Right to Unanimous Verdict

Mr. Palmer asserts that the burglary and felony menacing jury instructions failed to specify the particular victim or victims he was alleged to have menaced at the time he committed the first degree burglary.  [Docket No. 4 at 9.]  Mr. Palmer contends that the prosecution exacerbated this error by arguing that the jury could convict based only on his intent to menace either one or both of the purported victims.  [*Id.*]  Mr. Palmer further contends that as a result he was deprived of his right to a unanimous jury verdict

and a finding of guilt beyond a reasonable doubt on each element of first degree

burglary and felony murder.  [*Id.*]

Respondents argue that under *Johnson v. Louisiana*, 406 U.S. 356 (1972), and

*Apodaca v. Oregon*, 406 U.S. 404 (1972), a state criminal defendant, at least in

noncapital cases, has no right to a unanimous jury verdict.  [Docket No. 18 at 19.]

Furthermore, Respondents relying on *Schad v. Arizona*, 501 U.S. 624, 643-44 (1991) (a

deciding jury does not have to agree on the same mental state where two different

mental states satisfy the *mens rea* element of a single offense), and *Hoover v.*

*Johnson*, 193 F.3d 366 (5th Cir. 1999) (jury not required to return a special verdict as to

which of numerous acts satisfied the "over act" element of conspiracy), argue that a jury

does not have to reach unanimous agreement on which of two possible individuals was

the victim of a charged offense to assure due process in a criminal proceeding.  [Docket

No.18 at 19-20.]  Mr. Palmer does not address Respondents' argument regarding this

claim.

With respect to Claim Two, the CCA found as follows:

> The jury was instructed on felony murder, with the predicate crime of burglary. A separate instruction specified the elements of burglary, including defendant's underlying intent to commit the crime of felony menacing, and referred to the felony menacing instruction.  The felony menacing instruction listed the elements of felony menacing, but did not specify a particular victim.

> Defendant contends that the failure to specify a victim in the felony menacing instruction permitted the jury to disagree on the intended victim and therefore render a nonunanimous verdict on the burglary charge and, consequently, the felony murder charge.  We find no error.

> The elements of first degree burglary are that a defendant "knowingly enters unlawfully, or remains unlawfully after a lawful or

17

unlawful entry, in a building or occupied structure with intent to commit therein a crime," and that in the course of the burglary, "the person or another participant in the crime assaults or menaces any person." Section 18-4-202(1), C.R.S. 2002; *see* § 18-4-203, C.R.S. 2002 (second degree burglary has no actual assault or menacing element).

Here, defendant was separately convicted of felony menacing, and because the special verdict form specified the female occupant as the particular victim, in finding the defendant guilty of felony menacing, the jury must have unanimously agreed that defendant menaced the female occupant.  Thus, the element of first degree burglary that a completed assault or menacing occur is not at issue here.  Rather, the issue is whether the jury was required to agree on the intended victim of felony menacing, which it did.

The elements of burglary, as well as the elements of the underlying crime a defendant intended to commit must be correctly given to the jury, and the jury must unanimously agree that the defendant intended to commit the underlying crime.  *See People v. Archuleta,* 180 Colo. 156, 503 P.2d 346 (1972).  However, while the jury must unanimously agree on all elements of a crime, the jury is not required to unanimously agree on the evidence or theory by which a particular element is established.  *See People v. Hall* 60 P.3d 728 (Colo. App. 2002).

We conclude that, because the element of burglary here is the intent to commit a crime, the jury is not required to agree on the intended victim of the underlying menacing.  To commit an actual crime, there must be a victim of that crime.  However, a person can have the mental state of intent to commit a crime without having an identified specific victim.  For instance, a defendant may break into a home with the intent to commit sexual assault, but not have an identified victim in mind; may have a particular victim in mind and yet complete the intended crime against a different victim; or may intend to commit the crime, but never actually complete the crime.  In each of these instances, the element of burglary that defendant "intend to commit therein a crime" is met.  *See* § 19-4-202(1) (first degree burglary); *People v. Mandez,* 997 P.2d 1254 (Colo. App. 1999) (when underlying offense is theft in a prosecution for burglary, the prosecution has no burden to establish the particular item or items the perpetrators intended to steal).

Thus, while we agree with defendant that to convict him of burglary, the jury must agree on the underlying felony defendant intended to commit, *see People v. Archuleta, supra,* it does not follow that the jury must agree on the intended victim of the underlying crime of felony

menacing.  *See* § 18-3-206, C.R.S. 2002 (person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury).

Consequently, here, the intent element of burglary may be satisfied by proof that defendant had the intent to menace any occupant of the premises. The jury could have differed on the evidence that satisfied the element of intent to commit felony menacing and yet decided unanimously that this element was met.  *See People v. Hall, supra.*  Because the jury could unanimously have found defendant guilty of burglary without agreeing on the intended victim of menacing, the resulting felony murder conviction, in this regard, was also unanimous.

*Palmer*, 87 P.3d at 140-41.

The United States Supreme Court has indicated that the "Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least where the definition risks serious unfairness and lacks support in history or tradition."  *See Richardson v. U.S.*, 526 U.S. 813, 820 (1999) (citing  *Schad*, 501 U.S. at 632-33).  In *Richardson*, the Supreme Court pointed out that where an element of robbery is force or the threat of force some jurors might disagree on the means; for example whether a defendant used a knife or a gun to create a fear, it does not matter as long as all jurors unanimously conclude that the government proved the defendant had used force.  *Richardson*,  526 U.S. at 817 (1999) (citing *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, J. concurring)).  Here, the element of burglary is menacing anyone in the building.  Although jurors may differ on who was the victim of menacing, like the example in *Richardson* where jurors could find the element of force either by the use of a knife or a gun, it does not matter as long as all jurors unanimously conclude that the state proved the defendant had menaced an

occupant of the building.  Accordingly, the Colorado Court of Appeal's determination regarding Mr. Palmer's unanimous verdict was not contrary to, or an unreasonable application of, Supreme Court law.  Claim Two will be denied on the merits.

        3.   Claims Three and Five -- Jury Instructions on Self-defense

            a.   "No Duty to Retreat" Doctrine

Mr. Palmer asserts that the trial court failed to instruct the jury that, if it found he was not the initial aggressor, he was under no duty to retreat before employing deadly force in self-defense.  [Docket No. 4 at 17.]  Mr. Palmer concedes that the trial court properly concluded that the jury should receive instructions on both the "No Duty to Retreat Doctrine" and the "Initial Aggressor Duty to Retreat Doctrine" if he was the initial aggressor, but he argues that the trial court erred in not instructing the jury that he had no duty to retreat if he was not the initial aggressor.  [*Id.* at 19.]  Mr. Palmer also contends that whether he was the initial aggressor was a "hotly contested" issue at trial, and the trial court's failure to instruct the jury on this affirmative defense deprived him of an acquittal in violation of his due process rights.  [*Id.* at 20-21.]

Respondents argue that, under *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991), the fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief.  [Docket No. 18 at 22.]  An instructional error must rise to the level of a due process violation before reversal is required, and not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  [*Id.* at 23.]  Relying on *Middleton v. McNeil*, 541 U.S. 433, 437 (2004), Respondents assert that the question is "whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process."  [Id.]  Respondents

20

further assert that because Mr. Palmer's theory only is relevant to first-degree murder and second-degree murder and not to felony murder, of which he ultimately stood convicted, the CCA found the failure to give the instruction as suggested by Mr. Palmer was harmless.  [*Id.*]

Respondents also argue, based on *Hughes v. Quarterman*, 530 F.3d 336, 345 (5th Cir. 2008) (citing *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003)), that Mr. Palmer is entitled to federal habeas relief only if the state court applied harmless error review in an objectively unreasonable manner.  [*Id.* at 23-24.]  Finally, Respondents conclude that because the CCA applied the standard set forth in *Neder v. United States*, 527 U.S. 1, 15 (1999) (in analyzing instructional error a court must assess whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained") (internal quotation marks and citation omitted), the analysis was objectively reasonable and federal habeas corpus relief is unavailable.  [*Id.* at 24.]

With respect to Claim Three, the CCA found as follows:

> First, we disagree with defendant that the self-defense instruction given to the jury requires reversal.  This instruction related to the first degree and second degree murder charges.  The jury acquitted defendant of the first degree murder charge and found him guilty of second degree murder and felony murder.  However, the trial court subsequently merged the second degree murder charge into the felony murder charge. Thus, the only murder charge remaining was felony murder, to which self-defense does not apply, and, as a result, any error in the self-defense instruction as given was harmless.  *See People v. Renaud,* 942 P.2d 1253 (Colo. App. 1996) (self-defense may be available as an affirmative defense to a predicate felony but not as to the resulting death); *see also People v. Rodriguez,* 914 P.2d 230 (Colo. 1996) (trial court's failure to instruct on attempt was harmless error, as jury specifically found defendant guilty of first degree murder after deliberation); *Hughes v. People,* 175 Colo. 351, 487 P.2d 810 (1971) (alleged instructional error not subject to review where requested instructions went only to the

question of the charge of burglary, and the defendant was acquitted of
that charge).

*Palmer*, 87 P.3d at 141.

"A § 2254 petitioner has a heavy burden in attempting to set aside a state

conviction based on an erroneous jury instruction." *Nguyen v. Reynolds*, 131 F.3d

1340, 1357 (10th Cir. 1997) (citing *Maes v. Thomas,* 46 F.3d 979, 984 (10th Cir.1995)).

"[A] federal court may grant habeas relief based on trial error only when that error 'had

substantial and injurious effect or influence in determining the jury's verdict.' " *See*

*Calderon v. Coleman*, 525 U.S. 141, 145 (1998) (citation omitted); *see also Estelle*, 502

U.S. at 72 (an error in a trial proceeding must be one that implicates "fundamental

fairness" in order to constitute a due process violation); *Thornburg v. Mullin*, 422 F.3d

1113, 1126 (10th Cir. 2005) (trial court's failure to give voluntary intoxication instruction

*sua sponte* is reviewed only for denial of fundamental fairness and due process).  "[A]

defendant is entitled to an instruction as to any recognized defense for which there

exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United*

*States*, 485 U.S. 58, 63 (1988).  Also, "[t]he significance of the omission of such an

instruction may be evaluated by comparison with the instructions that were given," and

"an omission or an incomplete instruction, is less likely to be prejudicial than a

misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155-56 (1977).

A fundamental-fairness analysis is not based on clearly definable legal elements

and when engaged in such an analysis a court must use "considerable self-restraint."

*Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (citing *United States v. Rivera*,

900 F.2d 1462, 1477 (10th Cir. 1990)).  The Court's "[i]nquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th  Cir. 2002) (per curiam).

Even if an erroneous instruction rises to the level of a constitutional error, the Court must conduct its own harmless error analysis.  Unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson,* 507 U.S. 619, 629 (1993), the Court must apply the harmless error standard of *Brecht* and *O'Neal v. McAninch,* 513 U.S. 432 (1995).  Under *Brecht*, habeas relief is not proper unless the error "had a substantial and injurious effect on the jury's verdict," whether or not the state appellate court recognized the error and reviewed it for harmlessness under *Chapman v. California*, 386 U.S. 18 (1967).  *See Fry v. Pliler,* 551 U.S. 112, 121 (2007).

If the evidence is balanced so evenly that a court has grave doubt about whether the error meets this standard, the court must hold that the error is not harmless. *O'Neal,* 513 U.S. at 436-37.  Such a holding involves more than just a finding that there was an incorrect application of federal law, requiring instead a showing "somewhere between clearly erroneous and unreasonable to all reasonable jurists."  *Maynard,* 468 F.3d at 670.  A "'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict."  *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (citing *O'Neal*, 513 U.S. at 436).  There is "grave doubt" when the issue of harmlessness "is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error."  *O'Neal,* 513 U.S. at 435.  The

Court makes this harmless error determination based upon a review of the entire state court record.  *See Herrera v. Lemaster,* 225 F.3d 1176, 1179 (10th Cir. 2000).

Upon review of the jury instructions in this case, the Court finds that Mr. Palmer tendered a jury instruction, referred to as "Defendant's Tendered and Rejected Instruction No. 2," that stated, "[t]he Defendant is entitled under the law to exercise his right to self-defense without attempting to retreat or flee.  He had the right to stand his ground and defend himself when he was confronted by a person he reasonably believed was going to use a gun."  Case No. 00CR907, Denver District Court File at 89. Mr. Palmer's trial attorney referred to this instruction as a "retreat to the wall instruction." Case No. 00CR907, Trial Transcript, Vol. Twelve at p. 617.  The trial attorney argued that this instruction should go to the jury and was supported by *Idrogo v. People*, 818 P.2d 752 (Colo. 1991).  *Id.*  The trial court found Mr. Palmer's tendered Jury Instruction No. 2 was already addressed in Instruction No. 21, Trial Transcript, Vol. Twelve at p. 617, which was given to the jury and reads as follows:

> It is an affirmative defense to the crimes of Murder [i]n the First Degree (after deliberation) and Murder in the Second Degree that the Defendant used deadly physical force because:
>
>> 1.  he reasonably believed a lesser degree of force was inadequate and,
>>
>> 2.  had reasonable grounds to believe, and did believe, that he or another person was in imminent danger of being killed or of receiving great bodily injury.
>
> When one is the initial aggressor, he is not justified in using physical force on another person unless:
>
>> 1.  he withdraws from the encounter, and

2.  effectively communicates to the other person his intent to withdraw, and

3.  the other person continues or threatens the use of unlawful physical force.

The Defendant is not required to retreat in order to claim the right to employ force in his defense.

Denver District Court File at 123.

First, Mr. Palmer's situation, contrary to his trial attorney's argument at the time, is distinguishable from the defendant in *Idrogo*.  In *Idrogo*, the jury instruction was found to be inadequate because the instruction failed to explicitly explain the doctrine of no-retreat as codified in Colo. Rev. Stat. § 18-1-704(2)(a).  *Idrogo*, 818 P.2d at 754.  The court in *Idrogo* also found that "a trial court must tailor instructions to the particular circumstances of a given case when the instructions, taken as a whole, do not adequately apprise the jury of the law of self-defense from the standpoint of the defendant."  *Id.*   At issue in *Idrogo* was whether defendant was required to retreat before using deadly force.  The court found that no such duty existed and defendant was entitled to a no-retreat instruction.  *Id.*  Here, as stated above, the jury instruction included language that Mr. Palmer was not required to retreat in order to claim the right to employ force in his defense.

Second, upon review of the entire trial proceedings, the Court finds the following: Testimony by the prosecution's eyewitness would support a finding that Mr. Palmer was not acting in self-defense.  The prosecution's eyewitness testified that Mr. Palmer knocked loudly on the door, entered the apartment when the eyewitness unlocked the door, pushed the eyewitness in the chest, and then put a gun in her face.  *See* Trial

Transcript, Vol. No. Ten at 393-96.  The eyewitness testified that Mr. Palmer asked the

victim for the "dope sack," to which the victim replied he did not have the dope sack.  *Id.*

at 397.  The eyewitness testified that Mr. Palmer then pulled the trigger, but the gun did

not fire; Mr. Palmer pulled the trigger again and shot the victim in the chest.  *Id.* at 398-

99. The eyewitness further testified that Mr. Palmer threatened to shoot her and pointed

the gun at her at least three times.  *Id.* at 400.

The eyewitness for Mr. Palmer testified that he was with Mr. Palmer when Mr.

Palmer confronted the victim.  *See* Trial Transcript, Vol. No. 11 at 550-563.  Mr.

Palmer's witness testified that he and Mr. Palmer were invited into the apartment by the

prosecution's witness and that an argument ensued resulting in a physical confrontation

when the victim charged Mr. Palmer.  *Id.* at 551-55.  Finally, Mr. Palmer's eyewitness

testified that the victim had the gun first, but at the time the gun fired the victim and Mr.

 Palmer were wrestling so he could not see who had the gun; the victim fell back on the

couch, and the witness and Mr. Palmer left the apartment.  *Id.* at 554 and 558-59.

On cross-examination, Mr. Palmer's witness confirmed he was a close friend of

Mr. Palmer and his family, but he failed to submit a statement to the police or provide

information that could prove Mr. Palmer's innocence until the time of the trial, which was

a year after the shooting.  *Id.* at 563-580.  This created doubt about the credibility of the

witness's testimony.  Also, on cross-examination, the prosecution countered the

account of the physical confrontation between Mr. Palmer and the victim by showing

pictures of the small area in the apartment where the physical confrontation took place.

*Id.* at 573-76.  The picture indicated that the items on the coffee table were not

disturbed, which is unlikely given the size of the apartment and the physical confrontation described by Mr. Palmer's witness. *Id.* at 573-76.

On cross-examination of the prosecution's eyewitness, Mr. Palmer's trial attorney, in anticipation of diminishing the credibility of the witness's testimony, questioned her regarding: (1) Mr. Palmer shooting the victim only once even though he was angry with the victim; (2) her previous conflicting testimony as to how many times she had smoked crack on the day the victim was shot, how many people were in the hallway by her apartment at the time of the shooting, and how many times Mr. Palmer was at her apartment the day of the shooting; (3) the victim's possible concern for his safety and need to have a gun because the witness's husband was released from prison the day of the shooting and was expected to come to her apartment; and (4) her statement to the police in which she said she wanted to see Mr. Palmer's "ass fry." *Id.* 447-503.

As stated above, the only two eyewitnesses to testify about the incident between Mr. Palmer and the victim provided very different accounts of who was the initial aggressor. *See* Trial Transcript, Vol. No. Ten at 372-418 and Vol No. Eleven at 419-523 and 533-608.  The jury's determination of who was the initial aggressor is a prelude to finding whether Mr. Palmer is entitled to an affirmative defense.  Whether the victim or Mr. Palmer was the initial aggressor was based on the testimony provided at trial and was a fact for the jury to decide.  Based on the testimony provided, it is reasonable that the jury found Mr. Palmer was the initial aggressor.

Third, having reviewed both Mr. Palmer's tendered Instruction No. 2 that was rejected by the trial court and Instruction No. 21 that was given to the jury, this Court

finds that the tendered Instruction No. 2 was included in Instruction No. 21.  Therefore,

the omission of Instruction No. 2 did not deprive Mr. Palmer of his right to have the jury

instructed on his defense theory.  Although the third paragraph in Instruction No. 21

would provide more continuity if it was placed between the first and second paragraph,

it is clear that the statement "Defendant is not required to retreat in order to claim the

right to employ force in his defense" was not intended to support the previous

paragraph's instruction on when an initial aggressor is not justified in using force.

Instruction No. 21 properly sets forth the law for the jurors.  Mr. Palmer's claim,

therefore, does not assert a misstatement of law and is less likely to be prejudicial.

*Henderson*, 431 U.S. at 155-56.

Finally, upon review of the trial record, the Court finds that the jury was

presented with sufficient evidence against Mr. Palmer that could support a finding that

Mr. Palmer was the initial aggressor and did not act in self-defense.  *Le*, 311 F.3d at

1013.  Furthermore, like the CCA, the Court finds that, even if there was an error in the

self-defense instruction as given, the error was harmless.  The trial court merged the

second degree murder charge into the felony murder charge, to which self-defense

does not apply.  *See* Colo. Rev. Stat. § 18-3-102(2).

Mr. Palmer, therefore, has made no showing that this alleged error "had [a]

substantial and injurious effect or influence in determining the jury's verdict."  *Calderon*,

525 U.S. at 145.  Mr. Palmer has failed to show that the instruction was clearly

erroneous and unreasonable.  Furthermore, even if there was an error in the self-

defense instruction, the Court has no doubt that the error was harmless.  The Court

finds that the CCA's decision was not contrary to or an unreasonable application of

clearly established federal law, nor was it an unreasonable determination of the facts presented in the state court proceeding.  Accordingly, Claim Three will be denied on the merits.

### b.  Self-Defense -- Recklessness or Negligence

In Claim Five, Mr. Palmer asserts that a defendant who is charged with reckless and negligent conduct may not be entitled to the affirmative defense of self-defense, but the trial court, nonetheless, is required to instruct the jury that it may consider whether a defendant acted in self-defense when determining whether he acted recklessly or in a criminally negligent manner.  [*Id.* at 31.]  Mr. Palmer further asserts that the evidence in the record did entitle him to an instruction that the jury could consider whether his defensive conduct reduced his knowing mental state to, or refuted, the mental state of reckless or criminally negligent and that the trial court denied his due process rights in failing to allow the instruction.  [*Id.* at 29-30.]

Along with the arguments set forth in the "No Duty to Retreat Doctrine" discussion above, Respondents assert that any failure to apply self-defense to a determination of acting recklessly or negligently would be harmless because the reckless and negligent offenses would have merged into the felony murder offense, like second-degree murder, to which an argument of self-defense does not apply.  [Docket No. 18 at 23.]

With respect to Claim Five, the CCA found as follows:

> Lastly, we reject defendant's contention that reversal is required because the court refused to instruct the jury to consider evidence of self-defense when determining whether defendant acted recklessly or negligently.

> At trial, defendant requested and the jury received instructions on second degree murder and the lesser offenses of reckless manslaughter and criminally negligent homicide.  However, the court rejected defendant's tendered instruction that self-defense was not a defense to the crimes of reckless manslaughter or negligent homicide, but that the jury may consider evidence that defendant acted in self-defense to determine whether he committed those crimes.

> Even if the failure to give the instruction was in error, such error did not contribute to defendant's convictions and was therefore harmless.  As discussed, the trial court merged the second degree murder conviction into the felony murder conviction.  Had defendant, in the alternative, been convicted of reckless or negligent homicide, such convictions would also have merged into the felony murder conviction.  *See People v. Jones,* 990 P.2d 1098 (Colo. App. 1999) (reckless manslaughter merges into felony murder).  *Id.*

*Palmer*, 87 P.3d at 141.

Trial attorney for Mr. Palmer tendered an instruction to the trial court that reads

as follows:

> Although self-defense is not an affirmative defense to the crimes of _____, you may consider the evidence that the Defendant acted in self-defense to determine whether the prosecution has proven these crimes beyond a reasonable doubt.

> If you find that the Defendant acted in self-defense, he was not acting recklessly or negligently as a matter of law.  Therefore, if you find the Defendant acted in self-defense, you must find him guilty of  _____.

> Self-defense is still an affirmative defense to the crimes of _____ _____.

Denver District Court File at 92.  Mr. Palmer's trial attorney argued that

> Tendered Instruction Number 6 is an instruction that tells the jury, although self-defense is not an affirmative defense to manslaughter or criminally negligent homicide, they should still consider evidence of self-defense as it relates to proof of the mental state of recklessness or negligence.  The case that supports that is *People v. Roberts*.  I only have the docket cite, 95CA2122, Court of Appeals from May of 1998 in which it specifically says that there should be an instruction informing the jury that

they can consider evidence of self-defense as it relates to reckless or
negligent conduct.

Tr. Transcript, Vol. No. 12 at 618-19.  The trial court denied the tendered instruction

based on case law finding that self-defense does not apply to recklessness or criminal

negligence and that if the jury were to determine Mr. Palmer acted with recklessness or

criminal negligence they would have rejected a self-defense theory.  *Id.* at 623.

In *People v. Roberts*, 983 P.2d 11 (Colo. App. 1998), the CCA found:

Here, the jury should have been instructed that, in determining whether
defendant committed the crime of reckless manslaughter or the lesser
offense of criminally negligent homicide, it should consider whether
defendant reasonably believed that it was necessary for him to use deadly
physical force to defend himself or another person from the use or
imminent use of unlawful physical force by the victim, and that he could
use that degree of force which he reasonably believed to be necessary for
that purpose.

*Roberts*, 983 P.2d at 14.

Although the trial court based the denial of instruction on case law, the trial court

failed to identify the case law that supported the decision.  Tr. Transcript, Vol. No.

Twelve at 623.  Nonetheless, the omission of the tendered instruction is less likely to be

prejudicial than a misstatement of the law.  *Henderson*, 431 U.S. at 155-56.  Here, as

stated above, the Court finds that the jury was presented with sufficient evidence

against Mr. Palmer that could support a finding that Mr. Palmer was the initial aggressor

and did not act in self-defense.  *Le*, 311 F.3d at 1013.  Even if there was an error in the

self-defense instruction as given, the error was harmless.  As stated above, the trial

court merged the second degree murder charge into the felony murder charge to which

self-defense does not apply.  *See* Colo. Rev. Stat. § 18-3-102(2).

Mr. Palmer, therefore, fails to demonstrate that this alleged error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Calderon*, 525 U.S. at 145.  Any error, without a doubt, was harmless.  The Court finds that the CCA's decision was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts presented in the state court proceeding.  Accordingly, Claim Five will be denied on the merits.

### 4. Claim Eight -- Violation of Right to Testify

In Claim Eight, Mr. Palmer asserts that his right to testify was violated when his trial attorney used erroneous information to convince him not to testify in his own behalf.  [Docket No. 4 at 41.]  Claim Eight appears to be based on ineffective assistance of counsel and will be addressed below under Section 6, "Claim Eleven -- Ineffective Assistance of Counsel, Subsection (c) Subpart (e) -- False Information on Right to Testify."

Under Colorado law, a trial court is required to advise a defendant of the right to testify and obtain a formal waiver of that right.  *People v. Curtis,* 681 P.2d 504 (Colo. 1984).  In adopting this heightened requirement of advisement, the Colorado Supreme Court acknowledged that a majority of courts addressing the issue have not required that waiver of the right to testify be made on the record in open court.  *Curtis,* 681 P.2d at 512 n. 9.

 The Tenth Circuit Court of Appeals has held that there is no constitutional or statutory mandate that a trial court inquire into a defendant's decision not to testify in the absence of specific circumstances that might trigger an inquiry.  *United States v.*

*Janoe,* 720 F.2d 1156, 1161 (10th Cir. 1983) (specifically rejecting a defendant's contention that the "record [must be] clear that defendant knowingly and voluntarily 'after full consultation with his counsel,' gave up the right to testify").  The Tenth Circuit later reaffirmed and clarified its holding in *Janoe,* concluding that the trial court does not have a *sua sponte* duty to conduct a colloquy with the defendant at trial to determine whether the defendant has knowingly and intelligently waived the right to testify, and that absent triggering circumstances, a trial court is not required to inquire into the defendant's decision not to testify.  *United States v. Dryden,* 141 F.3d 1186 at *1-2 (10th Cir. Mar. 10, 1998) (unpublished) (citations omitted), *vacated in part on reh'g on other grounds*, 166 F.3d 1222 (10th Cir. Apr. 22, 1998).

Here, the trial court advised Mr. Palmer on the record of his right to testify.  *See* Tr. Transcript, Vol. No. 11 at 526-30 and 593-96.  The trial court permitted Mr. Palmer to confer with his attorney over the noon recess about his decision whether to testify. *See id.*  After the noon recess, the trial court instructed Mr. Palmer that even if his attorney had advised him either to testify or to not testify he must make the decision on his own about what he should do.  *Id.* at 594.  Mr. Palmer responded that he understood, that he made the decision not to testify voluntarily, and that he was not under undue influence, pressure, or coercion, drugs, alcohol, or medication, or subject to any mental disorder or psychological problem.  *Id.* at 594-95.  The trial court, therefore, found that Mr. Palmer voluntarily, knowingly and intentionally waived his right to testify.  *Id.* at 595-96.  Furthermore, the CCA found that Mr. Palmer conceded on appeal that he received a complete and proper *Curtis* advisement.  Therefore, to the

extent Mr. Palmer asserts that the trial court violated his constitutional rights in accepting his decision not to testify, the claim lacks merit and will be denied.

### 5.  Claim Ten -- Trial Attorney's Conflict of Interest

Mr. Palmer asserts that both he and one of the prosecution's witnesses were represented by the Denver Public Defender's Office in separate pending criminal cases before the Denver District Court at the time of Mr. Palmer's trial.  [Docket No. 4 at 50.] Mr. Palmer further asserts that his trial attorney failed to disclose to him prior to trial that the prosecution's witness was represented by a public defender who was in the same office as Mr. Palmer's trial attorney, which deprived him of the right to request that the court hold a hearing to determine the extent of the conflict of interest and, if necessary, request substitute, conflict-free counsel.  [*Id.*]  Mr. Palmer also asserts that his trial attorney failed to request a halt in the proceedings to conduct a conflict of interest hearing.  [*Id.*]

Moreover, Mr. Palmer contends the prosecution's witness stated during his testimony that he believed his providing inculpatory information against Mr. Palmer during an interview with a detective resulted in his criminal charges in the Denver District Court being dismissed.  [*Id.* at 52.]  Mr. Palmer contends that the witness's testimony was prejudicial to him because the witness made conflicting statements at trial about Mr. Palmer not having a gun, which allowed the jury to consider the witness's pre-trial interview statements during which he stated Mr. Palmer had a gun.  [*Id.*]

Mr. Palmer argues that his trial attorney knew of the conflict because it is reasonable to believe that he talked with the witness's attorney about the witness testifying in Mr. Palmer's criminal case.  [*Id.* at 53-54.]  Mr. Palmer also argues that his

34

trial attorney should have discovered the extent and nature of the witness's pretrial statement and the extent of the negotiations conducted between the witness's attorney, the police, and the parole officer that led to the dismissal of the pending criminal charges against the witness.  [*Id.* at 54.]  Mr. Palmer asserts that the trial court also violated his due process and equal protection rights when it failed to halt the trial proceedings *sua sponte* and conduct a hearing to determine the extent of the nature of the conflict.  [*Id.* at 56.]

Respondents admit that the Sixth Amendment right to counsel is violated when a defense attorney has an actual conflict of interest that adversely affects his performance, [Docket No. 18 at 31], but contend the record does not support any actual conflict of interest that adversely affected Mr. Palmer's trial attorney's performance. [*Id.*]  Respondents further contend that although the record does not show a plea agreement was established between the prosecution and the witness in exchange for his testimony, Mr. Palmers' trial attorney vigorously cross-examined the witness in an attempt to impeach his testimony by proving such an agreement existed.  [*Id.*] Respondents also contend that the witness's testimony at trial was more favorable to Mr. Palmer than his pre-trial statement to the police.  [*Id.*]

With respect to Claim Ten, the CCA found as follows:

> Defendant next contends that the trial court erred in denying without an evidentiary hearing his claim based on the conflict of interest of trial counsel.  Specifically, defendant asserts that, because his attorney worked for the public defender's office, and another attorney in that office had previously represented one of the prosecution's witnesses in an unrelated case, a conflict of interest existed.  He also asserts that a conflict of interest existed because the prosecution agreed to dismiss the

unrelated criminal charges against the witness in exchange for the witness's testimony at defendant's trial.  We are not persuaded.

The right to effective assistance of counsel may be violated when an attorney's representation is intrinsically improper because of an actual conflict of interest.  If a conflict of interest is asserted and, as here, no objection to the conflict was raised during the trial, a defendant must demonstrate that an actual conflict of interest adversely affected his attorney's performance.  *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 1718, 64 L. Ed.2d 333 (1980); *see also People v. Kenny*, 30 P.3d 734, 745 (Colo. App. 2000).

The defendant must point to specific instances in the record to suggest actual impairment of his interest.  *People v. Kenny, supra*, 30 P.3d at 745.  "More specifically, the defendant must identify something that counsel chose to do or not do, as to which he had conflicting duties, and must show that the course taken was influenced by that conflict." *People v. Kenny, supra*, 30 P.3d at 745 (quoting *Vance v. Lehman*, 64 F.3d 119, 124 (3d Cir. 1995)).

If a defendant meets this burden, the requisite degree of prejudice is established, and he does not have to demonstrate that the result of the trial would have been different without the conflict.  *People v. Kenny, supra*, 30 P.3d at 745.

We agree with the trial court that the record fails to establish that any actual conflict of interest adversely affected defense counsel's performance.

We note initially that the record is devoid of evidence that there was an agreement between the prosecution and the witness whereby the prosecution promised to dismiss criminal charges against the witness if the witness testified adversely to defendant.  Nevertheless, during a vigorous cross-examination of the prosecution witness, defense counsel attempted to prove that an agreement was reached.  Specifically, defense counsel asked the witness why he thought the criminal charges against him were dismissed, and the witness responded, "I don't know why, but if you want to know what my feelings were, it's because of this case.  That is what I am thinking."  This evidence, without more, is insufficient to establish that an agreement between the prosecution and the witness was reached.

Thus, the record belies defendant's argument that his right to cross-examine this witness was hampered by a conflict because his counsel, who was a public defender, conducted the examination, or

36

>because there was an agreement between the prosecution and the witness. Cross-examination by an attorney whose office had never represented the witness would have yielded the same result. *See People v. Cevallos-Acosta*, 140 P.3d 116, 126 (Colo. App. 2005).
>
>Moreover, the witness's trial testimony was more favorable to defendant that the witness's statement originally provided to the police. At trial, the witness testified that, although he was unsure whether defendant was holding anything when defendant approached the victim's door, defendant could have been holding a glove, stick, or knife. This refuted his earlier statement to the police that defendant was holding a black revolver when he knocked on the victim's door.
>
>Under these circumstances, defendant has not shown any adverse effect from counsel's alleged conflict of interest.

*State of Colo. v. Palmer*, No. 05CA2534 at 6-10 (Colo. App. Aug. 2, 2007) (Not published).

A criminal defendant has a constitutional right to representation by an attorney that is free from conflicts of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). In order to prevail on a claim that an attorney was ineffective because of a conflict of interest, Mr. Palmer must show both that his trial attorney actively represented conflicting interests and that the conflict of interest adversely affected his attorney's performance. *See id*. Mr. Palmer's Sixth Amendment right to effective assistance of counsel is rooted in "the fundamental right to a fair trial," *Strickland v. Washington*, 466 U.S. 668, 684 (1984), which includes the right to conflict-free representation. *Cuyler*, 446 U.S. at 350.

As stated below, to prevail on an ineffective assistance of counsel claim, Mr. Palmer must show that his attorney's performance was deficient and that he was prejudiced as a result. *Strickland*, 466 U.S. at 687. Where a criminal defendant must

affirmatively prove prejudice to succeed on an actual ineffectiveness claim based on deficient performance, *id.* at 693, "prejudice is presumed when counsel is burdened by an actual conflict of interest." *Id.* at 692.  The Supreme Court has explained, however, that this is not a "*per se* rule of prejudice." *Id.*  Instead, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Id.* (quoting *Cuyler,* 446 U.S. at 350).

First, Mr. Palmer's conflict of interest claims are speculative regarding any discussion his trial attorney may have had with the public defender who represented the prosecution's witness.  Second, Mr. Palmer's claims are contradictory in that he asserts any contact his attorney had with the witness's attorney was a conflict, but yet his attorney was remiss in not investigating further the extent of any negotiation conducted between the witness's attorney and the police or parole officer that led to charges against the prosecution's witness being dropped in an unrelated case, which could involve a conversation with the witness's attorney.

Third and finally, the Court has reviewed the record.  Even if the Court were to find that Mr. Palmer's trial attorney talked with the public defender who represented the prosecution's witness and that his attorney should have disclosed to Mr. Palmer that the prosecution's witness was represented by a public defender in his attorney's office, these findings alone do not establish a conflict of interest.  Furthermore, any alleged contact by Mr. Palmer's attorney with the public defender who represented the prosecution's witness did not adversely affect his attorney's performance.  As noted by Respondents and the CCA, Mr. Palmer's attorney cross-examined the witness

38

regarding why his criminal case was dismissed and attempted to establish that a plea agreement was negotiated with the prosecution's witness in exchange for inculpatory information regarding Mr. Palmer.  Tr. Transcript, Vol. No. 10 at 339.  Furthermore, as noted by Respondents and the CCA, the witness's testimony on direct was favorable to Mr. Palmer.  Any discrepancy between the witness's testimony at trial and his statement at an interview with a detective prior to trial does not support a showing of a conflict of interest with Mr. Palmer's trial attorney, but rather a lack of credibility with respect to the witness.

Therefore, the Court finds that the CCA's decision was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts presented in the state court proceeding.  Accordingly, Claim Ten will be denied on the merits.  Furthermore, because Mr. Palmer's conflict of interest claim lacks merit, his claims regarding his attorney's failure to ask for a conflict of interest hearing and the trial court's failure to halt the criminal proceeding to hold such a hearing also lack merit and will be denied.

### 6.   Claim Eleven -- Ineffective Assistance of Counsel

At the time of Mr. Palmer's conviction, it was clearly established that a defendant has a right to effective assistance of counsel.  *See Strickland*, 466 U.S. 668.  To establish that his attorney was ineffective, Mr. Palmer must demonstrate both that his attorney's performance fell below an objective standard of reasonableness and that his attorney's deficient performance resulted in prejudice to his defense.  *See id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential."  *Id*. at 689. There is a "strong presumption" that counsel's performance falls within the range of

"reasonable professional assistance." *Id*.  It is Mr. Palmer's burden to overcome this

presumption by showing that the alleged errors were not sound strategy under the

circumstances. *See id*.  Under the prejudice prong, Mr. Palmer must establish "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id*. at 694.  If Mr. Palmer fails to satisfy either

prong of the two-part *Strickland* test, the ineffective assistance of counsel claim must be

dismissed. *See id*. at 697.  Finally, ineffective assistance of counsel claims are mixed

questions of law and fact. *See id*. at 698.

> (a)  Subpart (a) -- Failure to Investigate Information Known by
>       Defense Witnesses

Mr. Palmer asserts that his trial attorney failed to investigate or contact two

individuals, Bobby Price and "Wendel," to determine the extent of information they

possessed and the amenability of these witnesses to appear and testify on Mr.

Palmer's behalf.  [Docket No. 4 at 58.]  Mr. Palmer further contends that the witnesses

possessed exculpatory information, that they would have been amenable to testifying

had his trial attorney contacted them, and that he provided information to his attorney

for contacting the possible witnesses.  [*Id*. at 58.]

Respondents argue that the CCA found that the trial court properly rejected Mr.

Palmer's failure to investigate claim because the proposed testimony of "B.P." would

have been cumulative.  [Docket No. 18 at 34.]  Respondents also argue that Mr. Palmer

made no showing as to the substance of any alleged testimony by Wendel.  [*Id*.]

Respondents conclude that Mr. Palmer did not establish prejudice with respect to

*Strickland* in this claim.  Mr. Palmer did not reply to Respondents' arguments.

With respect to this claim, the CCA found as follows:

> We also disagree with defendant that counsel was ineffective by failing to call certain exculpatory witnesses.
>
> First, the record supports the trial court's finding that the testimony of B.P. would have been cumulative.  Thus, defendant has failed to establish the prejudice prong of the *Strickland* test.
>
> Second, defendant made no showing regarding the substance, credibility, or admissibility of any testimony that would have been provided by a second witness identified as "Wendel."  *See People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994) (defendant was unable to show prejudice where he "failed to produce any evidence as to who these potential witnesses might be, their willingness to testify . . .  and the substance, credibility, or admissibility of their testimony").  Defendant's allegations regarding this witness were merely conclusory.  Conclusory allegations are insufficient to demonstrate that defendant may be entitled to postconviction relief.  *See People v. Chambers*, *supra*, 900 P.2d at 1252.  Although defendant elaborates on his allegations in his opening brief on appeal, we cannot consider those allegations in reviewing the trial court order because he did not give the trial court the opportunity to consider them.  *See People v. Goldman*, 923 P.2d 374, 275 (Colo. App. 1996).
>
> Accordingly, counsel did not provide ineffective assistance by not calling those witnesses.

*Palmer*, No. 05CA2534 at 9-10.

In any ineffective assistance of counsel claim, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 691.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Id.* at 690-91.

41

First, Mr. Palmer fails to assert in the Amended Application what exculpatory testimony the two witnesses he has identified would have given.  Mr. Palmer provides no affidavit given by either witness stating their proposed testimony.  Second, Mr. Palmer's assertion that the witnesses were amenable to testifying is self-serving.   Mr. Palmer, therefore, does not establish his trial attorney's decision not to interview a potential witness was unreasonable.

In his appellate opening brief in his Rule 35(c) postconviction motion, Mr. Palmer did assert what testimony Mr. Price would have given.  He asserted Mr. Price would have testified that he saw Mr. Palmer knock on the door and Ms. Adams open the door and invite Mr. Palmer into the apartment and that there was no force or threats involved in the interaction between Ms. Adams and Mr. Palmer.  [Docket No. 18, Ex. A [Opening Br. Postconviction Mot.] at 24.]  Mr. Palmer further asserted that Mr. Price would have testified that he heard sounds of movement in the apartment, heard a gun shot, and then saw Ms. Adams run out of the apartment followed by Mr. Johnson and Mr. Palmer. [*Id.* at 25.]  Mr. Palmer also asserted in the opening brief that Mr. Price's testimony would have rehabilitated Mr. Johnson's testimony, at least regarding the portion about how freely Mr. Johnson and Mr. Palmer were allowed to enter the apartment.  [*Id.* at 25-26.]  Finally, Mr. Palmer asserted in the opening brief that Mr. Price's testimony would have countered Ms. Adams' claim that Mr. Palmer on three occasions threatened her with a gun when she tried to leave the apartment, given that Mr. Price would have testified that he only saw her run from the apartment one time.  [*Id.* at 26.]

Nonetheless, Mr. Price's testimony is cumulative of Mr. Johnson's testimony.  To the extent that Mr. Johnson's testimony was compromised regarding the alleged

42

physical confrontation between Mr. Palmer and the victim, the alleged testimony that Mr. Palmer contends Mr. Price would have given does not overcome the fact that nothing in the apartment was disturbed, as indicated by photographs of the apartment after the shooting took place, and therefore does not support Mr. Johnson's physical confrontation testimony.  Mr. Palmer fails to demonstrate reasonable probability that if Mr. Price had testified the jury would have disregarded the photograph of the apartment and the result of the criminal proceeding would have been different.

Mr. Palmer also asserts in the opening brief in this Rule 35(cc) postconviction motion that Wendel would have testified that he was an acquaintance of Mr. Wilson's and saw the victim with a gun and heard the victim state that he had done something to cause Mr. Palmer to come looking for him, corroborating Mr. Wilson's testimony.  [*Id.* at 28.]  Mr. Palmer, however, failed to assert these claims in the Rule 35(c) postconviction motion that he filed in the state district court.  *See* District Court File at P. 201-17.

Issues inadequately raised in the state district court will not be addressed for the first time on appeal.  *See People v. Rodriguez*, 914 P.2d 230, 251 (Colo. 1996). Presenting the claim only to the CCA does not satisfy the requirement that a claim must be fairly presented to the state courts.  Without raising his claims in the state district court, Mr. Palmer did not meet the requirement set forth under *O'Sullivan*, 526 U.S. at 838, that he complete one round of the State's established normal appellate review process.  The claim regarding Wendel's alleged testimony appears to be procedurally barred in this Court.

Even if the Court were to review the merits of the claim there is no basis for finding that Mr. Palmer demonstrates a reasonable probability that if Wendel had

43

testified the result of the criminal proceeding would have been different.  Wendel's testimony is cumulative of Mr. Wilson's testimony.  Given the evidence of Mr. Palmer's guilt, he has not demonstrated that the failure to introduce this cumulative testimony resulted in prejudice.

The Court finds that the CCA's decision was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts presented in the state court proceeding.  Accordingly, Mr. Palmer is not entitled to federal habeas relief on Subpart (a).

(b)  Subpart (c) -- Failure to Notify About Conflict of Interest

For the reasons stated above under Section 6, "Claim Ten -- Trial Attorney's Conflict of Interest," Mr. Palmer is not entitled to federal habeas relief on Subpart (c).

(c)  Subpart (e) -- False Information on Right to Testify

Mr. Palmer asserts that his trial attorney provided false and/or erroneous information to him with the intent to prevent him from testifying on his own behalf. [Docket No. 4 at 59.]

In response to Mr. Palmer's right to testify claim, Respondents address the assertions Mr. Palmer set forth in his opening brief before the CCA in his Rule 35(c) postconviction motion, where Mr. Palmer states that his attorney coerced him into giving up his right to testify by erroneously informing him that there was reversible error in his case due to an inadequate *Curtis* advisement and that due to his prior convictions he would have no chance of an acquittal if he testified.  [Docket No. 18 at 35.]  Mr. Palmer did not reply to Respondents' arguments.

With respect to this claim, the CCA found as follows:

We also reject defendant's argument that trial counsel was ineffective because he coerced defendant into waiving his right to testify.

Criminal defendants have a fundamental right to testify in their own defense. *People v. Curtis*, 681 P.2d 504, 509 (Colo. 1984). Waiver of a fundamental right must be voluntary, knowing, and intentional. *People v. Naranjo*, 840 P.2d 319, 322-23 (Colo. 1992). To make such a waiver, the defendant must be aware that he has a right to testify, know the consequences of testifying, and be cognizant that he may take the stand notwithstanding the contrary advice of counsel. *People v. Curtis*, *supra*, 681 P.2d at 514.

The trial court found, and defendant concedes on appeal, that he received a complete and proper *Curtis* advisement. Therefore, defendant knew that the decision whether to testify was his to make, regardless of his attorney's advice. *See e.g.*, *People v. Bradley*, 25 P.3d 1271, 1276 (Colo. App. 2001) (defendant given *Curtis* advisement by court; therefore counsel did not coerce defendant to testify); *People v. Sparks*, 914 P.2d 544, 548 (Colo. App. 1996) (*Curtis* advisement prevents defendant from arguing that counsel kept him from testifying). Accordingly, the trial court properly rejected this assertion without a hearing. *Cf. People v. Blehm*, 983 P.2d 779, 792 (Colo. 1999) (where trial court determines *Curtis* advisement was adequate, the defendant is not entitled to an evidentiary hearing on the issue of the validity of his waiver).

*Palmer*, No. 05CA2534 at 4-6.

A criminal defendant has a fundamental constitutional right to testify in his own behalf at trial. *See Rock v. Arkansas,* 483 U.S. 44, 49-52 (1987). The trial court, however, is not required to inquire into a defendant's decision not to testify, absent a showing that defendant did not make the decision not to testify, or into whether defendant and his attorney disagreed on whether defendant should take the stand. *See United States v. Janoe,* 720 F.2d 1156, 1161 (10th Cir. 1983). Here, the record demonstrates, Tr. Transcript, Vol. No. 11 at 526-30 and 593-96, and Mr. Palmer concedes in his opening brief on appeal [*see* Docket No. 18, Ex. A at 12] that the state

trial court gave Applicant a full *Curtis* advisement, as required by Colorado law.

Likewise, in reviewing this claim, both the state district court and the CCA found Mr.

Palmer knew that the decision whether to testify was his to make, regardless of his

attorney's advice. *See* Denver District Court File at 282; *Palmer*, No. 05CA2534 at 7.

Nothing in the trial record indicates that Mr. Palmer's trial attorney refused to

allow him to testify as he asserts in the Amended Application. The assertions Mr.

Palmer sets forth in the opening brief of his appeal of the Rule 35(c) motion [Docket No.

18, Ex. A at 12-14] are only speculative as to the affect his testifying would have had on

the jury. Mr. Palmer overstates his ability to overcome the disclosure to the jury of his

three prior convictions, which would have been used to impeach Mr. Palmer's

testimony. The three prior convictions include a class three felony aggravated robbery,

a class five felony menacing, and a class four felony burglary. Tr. Transcript, Vol. No.

11 at 527-28.

The Court finds the trial attorney's recommendation to Mr. Palmer that he not

testify is sound strategy and any attempt to coerce Mr. Palmer into agreeing not to

testify by his trial attorney, including telling Mr. Palmer that the *Curtis* advisement was

invalid because it was given in two separate sessions, is harmless. Even if the coercive

approach used by Mr. Palmer's trial attorney is considered inappropriate, Mr. Palmer

was not prejudiced by the approach. Therefore, nothing Mr. Palmer presents in the

opening brief before the CCA states that his right to testify was violated.

Furthermore, pursuant to § 2254(e)(1), the factual findings of the state courts

that a *Curtis* advisement was given, and that there was a voluntary, knowing, and

intelligent waiver of the right to testify, are presumed correct. Mr. Palmer bears the

burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Mr. Palmer fails to present any clear and convincing evidence to overcome the presumptively correct state court factual determination that he was fully advised of his right to testify regardless of his attorney's advise.

The Court finds that the CCA's decision was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts presented in the state court proceeding. Accordingly, Mr. Palmer is not entitled to federal habeas relief on Subpart (e).

(d) Subpart (g) -- Failure to File a Bill of Particulars

Mr. Palmer asserts that his trial attorney failed to file a bill of particulars regarding the burglary charge. [Docket No. 4 at 59.]

Respondents argue that the CCA held in Mr. Palmer's direct appeal that the information was sufficiently specific and that a filing of a bill of particulars would not have substantially aided the defense. [Docket No. 18 at 36.] Respondents, therefore, conclude that Mr. Palmer is not able to demonstrate that the failure to file a bill of particulars to obtain a more specific information would have caused the result of the proceeding to have been different. [*Id.*] Mr. Palmer did not reply to Respondents' arguments.

With respect to this claim the CCA found as follows:

> Defendant first contends that his trial counsel was ineffective because he failed to seek a bill of particulars and object to the completeness of the first degree burglary charge. However, those issues were in fact fully addressed, and rejected, by the division on direct appeal. *See People v. Palmer*, *supra*, 87 P.3d at 139-40. Thus defendant's present contention is successive and, therefore, untenable as a matter of law. *See* Crim. P. 35(c)(3)(VI); *People v. Fitzgerald*, 973 P.2d 708, 712

47

(Colo. App. 1998) ("If the grounds for asserting ineffective assistance of appellate counsel rest on errors alleged to have occurred at trial, and such errors have been reviewed and found to be without merit, they will not support a claim of ineffective assistance of appellate counsel.").

*Palmer*, No. 05CA2534 at 4.

As stated above, in Section 1, "Claim One -- Notice of Elements of Felony Murder," the information in Mr. Palmer's criminal case is constitutionally sufficient as it embodies the wording of the statute, which is fully descriptive of the offense, and contains elements of the burglary offense that fairly informed Mr. Palmer of the charges against him so that he may defend himself and bar future prosecutions for the same offense.  Therefore, a basis for filing a motion for a bill of particulars did not exist.  Mr. Palmer's trial attorney's performance was not deficient and did not result in prejudice to Mr. Palmer's defense for his decision not to file a bill of particulars.

The Court finds that the CCA's decision was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts presented in the state court proceeding.  Accordingly, Mr. Palmer is not entitled to federal habeas relief on Subpart (g).

Based on the above findings with respect to Subparts (a), (c), (e), and (g), the Court finds that Claim Eleven lacks merit and will be denied.

IV.  CONCLUSION

Accordingly, it is ordered:

1.      Petitioner Marcus Palmer's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 4] is denied.

48

2.      No certificate of appealability will issue because Mr. Palmer has not made

a substantial showing of the denial of a constitutional right or a substantial

showing that jurists of reason would find it debatable whether the

procedural ruling is correct and whether the underlying claim has

constitutional merit.

3.      This case is dismissed with prejudice.

DATED December 30, 2010.

                            BY THE COURT:


                             s/Philip A. Brimmer
                            PHILIP A. BRIMMER
                            United States District Judge